**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UTPALA B. VYAS, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-cv-1774 (JCH) |
|     v. | : | |
| | : | |
| DOCTOR'S ASSOCIATES, INC., | : | MARCH 21, 2018 |
|     Defendant. | : | |

**RULING RE: MOTION TO VACATE ARBITRATION AWARD (DOC. NO. 1) AND
MOTION TO CONFIRM ARBITRATION AWARD (DOC. NO. 10)**

This case comes before the court pursuant to a Motion to Vacate Arbitration Award filed by the plaintiff, Utpala Vyas ("Vyas"). See Motion to Vacate ("Pl.'s Mot.") (Doc. No. 1). The defendant, Doctor's Associates, Incorporated ("DAI"), is the franchisor of Subway sandwich shops in the United States. See Pl.'s Mot. at ¶ 2; Answer (Doc. No. 11) at ¶ 2. The plaintiff, Vyas, was a Subway franchisee, with three franchises. See Pl.'s Mot. at ¶ 1; Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Vacate ("Def.'s Mem.") (Doc. No. 9) at 1–2. In her Motion, Vyas moves to vacate a final, ex parte arbitration award terminating her franchise agreements with DAI pursuant to the Federal Arbitration Act ("FAA"), title 9 section 10(a)(3) and (4) of the United States Code. See generally Pl.'s Mot.; Final Ex-Parte Award (Doc. No. 1-1) at 112–16. DAI opposes Vyas's Motion to Vacate and cross-moves for an order confirming the arbitration award. Motion to Confirm ("Def.'s Mot.") (Doc. No. 10).

For the following reasons, Vyas's Motion to Vacate (Doc. No. 1) is denied, and DAI's Motion to Confirm (Doc. No. 10) is granted.

## I.     FACTUAL BACKGROUND

Vyas entered into franchise agreements with DAI for three different franchises between March 2007 and June 2015.  <u>See</u> Pl.'s Mot. at ¶¶ 5–7; Answer at ¶¶ 5–7.  It is undisputed that the arbitration clause in the third and final franchise agreement, for franchise number 36986, superseded the arbitration clauses in the first two franchise agreements, thereby becoming the relevant contractual agreement for the purposes of this case.  <u>See</u> Superseding Franchise Agreement, Exh. 3, Def.'s Mem. ("Franchise Agreement") (Doc. No. 9-1) at 50 ¶ 14 ("This Agreement, including the Recitals and all exhibits, contains the entire understanding of the parties and supersedes any prior written or oral understandings or agreements of the parties relating to the subject matter of this Agreement . . . .").

Paragraph 10 of the Franchise Agreement contains the arbitration clause, which provides that "[a]ny dispute arising out of or relating to this Agreement or the breach thereof will be settled by arbitration."  Franchise Agreement at ¶ 10(a).  It further provides that such arbitration may be conducted by either the American Arbitration Association or the American Dispute Resolution Center ("ADRC").  <u>Id.</u>  If arbitration is conducted by the ADRC, the Franchise Agreement provides that arbitration will be conducted pursuant to the ADRC's "administrative rules (including, as applicable, the Rules of Commercial Arbitration or under the Rules for Expedited Commercial Arbitration)."  <u>Id.</u>  The arbitration clause also states that "[j]udgment rendered by the arbitrator may be entered in any court having jurisdiction thereof."  <u>Id.</u>  Finally, the Franchise Agreement's arbitration clause states that "[a]ny disputes concerning the enforceability or scope of the arbitration clause will be resolved pursuant to the [FAA]."

Id. at ¶ 10(f); see also Pl.'s Mot. at ¶ 3 (FAA governs this proceeding); Answer at ¶ 3 (same).

On or about January 9, 2017, DAI initiated an arbitration proceeding with the ADRC seeking termination of two of Vyas's three franchises.  See Pl.'s Mot. at ¶ 9; Answer at ¶ 9.  That demand was subsequently amended on or about February 20, 2017, to seek termination of all three franchises.  See Pl.'s Mot. at ¶ 9; Answer at ¶ 9.  DAI's demand alleged that the amount in controversy was less than $10,000, which resulted in the ADRC applying its Rules of Expedited Commercial Arbitration ("Expedited Rules") to the dispute.  See Pl.'s Mot. at ¶ 9; Answer at ¶ 9.  Vyas filed an Answer with Affirmative Defenses and Counterclaims on January 27, 2017, alleging up to $500,000 in damages.  See Pl.'s Mot. at ¶ 16; Exh. C., Pl.'s Mot. (Doc. No. 1-1) at 28.  On February 2, 2017, the ADRC issued a statement noting that, due "to the amount of the Counterclaim, this matter will now be heard under the Regular Rules of Commercial Arbitration."  Pl.'s Mot. at ¶ 20.

The ADRC Rules of Commercial Arbitration ("Regular Rules") provide that the ADRC will provide a list of potential arbitrators to the parties, at which point the parties will have an opportunity to object in writing to any of the proposed arbitrators.  See Regular Rule 7 ("As soon after the initiation of a case as is practicable, ADR Center shall provide the parties with a list of arbitrators from which to select an arbitrator or arbitrators, as necessary.").[1]  Upon receipt of such a list, the Regular Rules provide that the parties will have fourteen days to provide written objections to the proposed list of

---

[1] The ADRC Regular Rules are available at
http://www.adrcenter.net/pdf/Commercial/CommercialRules121511.pdf.

arbitrators and may request up to seven additional days for a total of twenty-one days in

which to respond.  See id.  Rule 7 further provides that "[a]ny potential arbitrator to

whom either or both parties object[ ] shall be stricken from the list of potential

arbitrators."  Id.

Rule E-4 of the Expedited Rules governs appointment of arbitrators in expedited

arbitrations.  Rule E-4 provides:

> The parties will each receive an identical list of arbitrators
> consisting of five names from ADR Center's panel of neutrals.
> The parties may each have one peremptory strike.  The
> parties may also strike off an unlimited number of names for
> factual, for cause reasons.  However, the parties must provide
> a reason in writing for such strikes.  The parties must return
> their selections to ADR Center within ten calendar days.  If
> ADR Center is unable to appoint the arbitrator from the
> parties' selections, the Case Manager will appoint the
> arbitrator.

Expedited Rule E-4.[2]  As this text reflects, under either the Expedited Rules or the

Regular Rules, the ADRC provides the parties with a list of potential arbitrators, to

whom the parties may object in writing.  The only apparent substantive distinction

between the two provisions is the deadline for responding, which is not at issue in this

case.

Rule 12 of the Regular Rules states that an arbitrator who has been chosen will

not be "formally empanelled" until such prospective arbitrator discloses "any

circumstances that may present an appearance of a conflict of interest or otherwise

appear to affect his or her impartiality" and the parties are given the opportunity to file

written objections based on such disclosures.  Regular Rule 12.  If an objection is

---

[2] The ADRC Expedited Rules are available at
http://www.adrcenter.net/pdf/Commercial/ExpRules.pdf.

received, Rule 12 grants the ADRC authority to "determine whether the arbitrator will be permitted to serve and the parties will be informed of such decision, which shall be binding." Id. The Expedited Rules do not contain a provision akin to or inconsistent with Rule 12, which, pursuant to Expedited Rule E-8, means that Rule 12 applies with equal force to expedited and regular arbitrations. See Expedited Rule E-8 ("All other Rules set forth in the standard Rules of Commercial Arbitration, which are not inconsistent with, or otherwise covered by these Expedited Rules, shall also apply.").

On January 23, 2017, DAI and the ADRC received correspondence from Attorney Myles Alderman, counsel for Vyas, in which Attorney Alderman appeared on his client's behalf and objecting to procedure under the Expedited Rules on the ground that the amount in controversy exceeded $75,000. See Exh. 10, Def.'s Mem. (Doc. No. 9-1) at 86–89. Attorney Alderman also requested that all five of the proposed arbitrators provide conflict disclosures from those on the potential arbitrator list before making written objections. Id. In that correspondence, Attorney Alderman included ten questions largely related to potential conflicts of interest. Id.

On January 31, 2017, a representative of ADRC responded to counsel for Vyas's January 23 email. See Exh. 11, Def.'s Mem. (Doc. No. 9-1) at 90–91. She informed Attorney Alderman that the case would proceed under the Expedited Rules until he filed an answer and counterclaim, at which point the arbitrator would determine whether to continue applying the Expedited Rules. Id. She further extended the deadline for responses to the proposed arbitrators to February 2, 2017, and informed Attorney Alderman that the arbitrator would disclose "all his conflicts after he/she is selected," citing counsel to Rule 12. Id. Attorney Alderman replied that Vyas "would like to know

which of the proposed arbitrators have a demonstrated history of regularly granting to [DAI] the relief [DAI] seeks and which proposed arbitrators have already made findings as to the credibility of [DAI]'s witnesses and findings as to the interpretation of [DAI]'s operations manual" before she responded to ADRC's list of proposed arbitrators. Exh. D, Pl.'s Mot. (Doc. No. 1-1) at 29–32.

Vyas did not submit a response to the list of proposed arbitrators. See Exh. E, Pl.'s Mot (Doc. No. 1-1) at 33–34. Absent objections from the parties, ADRC appointed Attorney Mark R. Carta arbitrator on February 16, 2017. See Exh. 15, Def.'s Mem. (Doc. No. 9-1) at 108–09. Later that same day, Attorney Alderman sent the following response to the ADRC:

> You have done it again. This is just [sic] latest, in the ADR Center's pattern of appointing arbitrators over the written objection of franchisees in DAI-commenced arbitrations. As you know, the last two times the ADR Center did this, substantial time and money was wasted before the improperly appointed arbitrators finally removed themselves.
>
> Ms. Vyas object [sic] to the appointment of this arbitrator in writing (twice).[3]
>
> While awaiting the arbitrator's conflict disclosure, we reserve all right [sic].

Exh. 16, Def.'s Mem. (Doc. No. 9-1) at 110–11.

Attorney Carta subsequently issued a conflicts disclosure, which was shared with the parties on March 9, 2017. See Exh. F, Pl.'s Mot. (Doc. No. 1-1) at 35–40. On

---

[3] Although this correspondence suggests that Vyas objected to Carta individually, there is no evidence before the court that Vyas objected to Carta himself before Carta was appointed from the list of potential arbitrators. Absent any evidence to that effect, the court construes this language as a reference to Attorney Alderman's requests that conflict disclosures be made before appointment rather than after a prospective arbitrator is selected. See Exh. 10, Def.'s Mem. (Doc. No. 9-1) at 86–89; Exh. D, Pl.'s Mot. (Doc. No. 1-1) at 29–32.

March 20, 2017, Attorney Alderman objected to the appointment of Attorney Carta as arbitrator.  See Exh. G, Pl.'s Mot. (Doc. No. 1-1) at 41–45; Exh. H, Pl.'s Mot. (Doc. No. 1-1) at 46–52.  On March 24, 2017, the ADRC notified the parties that the ADRC "has considered the objections and responses and has determined that Mark Carta will continue his service as the neutral in the above captioned matter."  Exh. 19, Def.'s Mem. (Doc. No. 9-1) at 123–28.

On May 10, 2017, Attorney Carta issued a Scheduling Order, which set the evidentiary hearing for September 13 and September 14, 2017.  See Exh. 25, Def.'s Mem. (Doc. No. 9-2) at 7–10.  The scheduling order also set various discovery deadlines and pre-hearing briefs.  Id.  On July 6, 2017, Vyas requested the depositions of two fact witnesses, Rafe Hughes ("Hughes") and Nate Bennett.  See Exh. 30, Def.'s Mem. (Doc. No. 9-2) at 37–40.  Both Hughes and Nate Bennett work as "Field Consultants," inspecting Subway franchises.  See Pl.'s Mot. at ¶ 18.  Hughes and Nate Bennett are employed as Field Consultants by Nick Bennett, father of Nate Bennett, who is employed as a "Development Agent" for DAI in the region where Vyas's franchises were located.  See id.; Def.'s Mem. at 13–14.  In response to Vyas's Motion to depose Hughes and Nate Bennett, DAI erroneously objected to the request to depose Hughes and Nick Bennett, in part on the basis that both witnesses would be called by DAI to testify at the evidentiary hearing.  See Exh. 28, Def.'s Mem. (Doc. No. 9-2) at 25–31.  Vyas then compounded DAI's error by further referencing Nick Bennett, rather than Nate Bennett, in her reply to DAI's objection.  See id.  Attorney Carta granted Vyas's Motion over DAI's objection on July 12, 2017.  See id.  In that decision, however, Attorney Carta stated that Vyas "shall be permitted to conduct the depositions

of Mr. Hughes and Mr. Bennett." Id. Attorney Carta's decision did not, therefore, clarify the confusion surrounding which Mr. Bennett was at issue.

DAI contacted Vyas twice to schedule the depositions, first on July 18, 2017, and then on July 26, 2017. See Exh. 29, Def.'s Mem. (Doc. No. 9-2) at 32–36. Attorney Alderman responded to DAI's July 26 email later that same day suggesting dates for the depositions, including July 31, August 3, August 4, August 17, and August 18. Id. Then, on July 31, 2017, Vyas moved to compel DAI to produce Hughes and Nate Bennett and to modify the May 10, 2017 Scheduling Order, asserting that DAI "never provided [Vyas] with dates when the Witnesses would be available to be deposed" and "did not respond" to Vyas's correspondence suggesting dates. Exh. 30, Def.'s Mem. (Doc. No. 9-2) at 37–40. Vyas further asserted that "[i]t is no longer possible to schedule and complete the deposition of the Witnesses in time for [Vyas] to file a disclosure of witnesses by August 14, 2017," and that, "because the depositions cannot be started until after August 17, (at the earliest) the deposition transcripts will not be available in time for [Vyas] to prepare for the arbitration hearing without the extraordinary cost of expedited transcripts." Id. On August 1, 2017, Attorney Carta issued a decision regarding Vyas's Motion, which stated, in pertinent part, as follows:

> 1. The hearing dates of September 13 and 14th will not be postponed. The hearing will be conducted in Bridgeport.
>
> 2. The depositions noticed by the Respondent will be conduct on August 17 (or if the parties can agree in the next 48 hours on the 18th).
>
> . . . .
>
> 5. The witness disclosure deadline is moved to August 28, 2017.
>
> All other deadlines are hereby affirmed.

Exh. 31, Def.'s Mem. (Doc. No. 9-2) at 41–42.

On September 1, 2017, Vyas filed a Motion to Dismiss for failure to prosecute. See Exh. 32, Def.'s Mem. (Doc. No. 9-2) at 43–46. The basis for Vyas's Motion to Dismiss was DAI's failure to file its witness disclosures by the due date of August 28, 2017. Id. Vyas asserted that, because DAI bears the burden of proof and its choice of witnesses would affect Vyas's choice of witnesses, she "had intended to file [her] disclosure of witnesses shortly after receipt of [DAI's] disclosure of its witnesses" and that "[t]o proceed with the arbitration of [DAI's] claims under these circumstances would be fundamentally unfair and prejudicial to [Vyas]." Id. In response to Vyas's Motion to Dismiss, DAI contacted the ADRC on September 5, stating that DAI was "mistaken in the belief that [DAI]'s List of Witnesses was due on September 6, 2017," and requesting an extension until later that day by which to file their witness disclosure. Exh. 34, Def.'s Mem. (Doc. No. 9-2) at 51–55. In that email, DAI noted that "it's [sic] only witnesses are Kat Boucher, company representative, whom [Vyas's counsel] is familiar with and Rafe Hughes and Nate Bennett, Field Consultant, whom [Vyas's counsel] has already deposed in this matter." Id.

Attorney Alderman responded to that correspondence shortly thereafter. He noted that he had lost a week of time to prepare a pre-hearing brief due to DAI's failure to timely file its witness disclosures. Id. He also objected to the indication, from DAI's latest correspondence, that it did not intend to call Nick Bennett as a witness. Id. "The Respondent did not press for [Nick Bennett's] deposition (choosing to press only for the depositions of Nate Bennett and Rafe Hughes)," Attorney Alderman asserted, "because the Claimant reported, in opposing his deposition in early July, that it intended to call

Nicholas Bennett as a witness at the arbitration hearing."[4]  Id.  Attorney Alderman argued that the combination of a late disclosure of witnesses and DAI's failure to include Nick Bennett on its witness list would result in "arbitration by ambush," which was "fundamentally unfair."  Id.

Shortly thereafter on September 5, 2017, Attorney Carta denied Vyas's Motion to Dismiss.  See Exh. 34, Def.'s Mem. (Doc. No. 9-2) at 51–55.  He ordered DAI to file its witness disclosure and summary of anticipated testimony by 5 pm that day, and extended the deadline for Vyas's brief—but not DAI's—from September 6, 2017, to noon on September 8, 2017.  Id.  He stated that the hearing would proceed as scheduled on September 13 and 14, 2017.  Id.

Later that same day, Attorney Alderman requested that Attorney Carta reconsider his decision to make Vyas's pre-hearing brief due on September 8, 2017, and to retain the original hearing dates of September 13 and 14.  Exh. 36, Def.'s Mem. (Doc. No. 9-2) at 59–67.  Attorney Alderman asserted that he could not meet that deadline because he "will be in court today, has meetings scheduled for Wednesday, must be out of town for personal medical reasons on Thursday and will be out of town Friday while a family member undergoes major surgery."  Id.  He further argued that "granting [DAI's] untimely requests for extensions, without extend[ing] the hearing date is fundamentally unfair and grossly prejudicial to the Respondent."  Id.  Counsel for DAI, Attorney Dara Solan, objected to this request for reconsideration, noting that Vyas herself missed the witness disclosure deadline by four days, that Attorney Alderman

---

[4] To be clear, Vyas moved to depose only Hughes and Nate Bennett.  See Exh. 30, Def.'s Mem. (Doc. No. 9-2) at 37–40.

should have been prepared to meet the original briefing deadline of September 6, 2017, and that "[t]he fact that he has to go to court and attend to other meetings is not a reason that should take any weight in this matter." Id.

In response, Attorney Carta issued the following decision: "I have reconsider [sic] my ruling of this morning and it is affirmed. The scheduling deadlines set forth in this email for the pre-hearing submissions are September 6th for [DAI] and September 8th by noon for [Vyas]." Id.

The next day, on September 6, 2017, Vyas filed three motions: (1) a Motion for Authority for Witnesses to Appear Remotely, Exh. 37, Def.'s Mem. (Doc. No. 9-2) at 68–70; (2) a Motion to Compel Nicholas Bennett to Appear and Testify, Exh. 38, Def.'s Mem. (Doc. No. 9-2) at 71–74; and (3) a Motion to Preclude Claimant from Calling Undisclosed Witnesses in its Case in Chief, Exh. 39, Def.'s Mem. (Doc. No. 9-2) at 75–78.

On September 7, 2017, Vyas requested an extension of time until 9 a.m. on September 11, 2017, by which to file his pre-hearing brief. See Exh. 41, Def.'s Mem. (Doc. No. 9-2) at 83–88. Over DAI's objection, Attorney Carta granted Vyas's request for an extension of time. See Exh. 42, Def.'s Mem. (Doc. No. 9-2) at 89–91.

On September 9, 2017, Attorney Carta issued a decision with respect to Vyas's three pending motions. Evidently confused about the "Mr. Bennett" in question, Attorney Carta stated the following with respect to Vyas's Motion to Compel Testimony of Nick Bennett: "As Mr. Bennett appears on [DAI]'s witness list, I see no reason to compel his attendance. However, if [DAI] determines not to call him as a witness, I will revisit this issue. [DAI] is order [sic] to disclose on Monday, September 11 whether it

intends to call Mr. Bennett." See Exh. 43, Def.'s Mem. (Doc. No. 9-2) at 92–98.  In the same decision, Attorney Carta granted Vyas's Motion for Authority for Witnesses to Appear Remotely.  Id.  Finally, he reserved judgment as to Vyas's Motion to Preclude Claimant from Calling Undisclosed Witnesses, on the basis that said Motion was "premature."  Id.

On September 11, 2017, Vyas filed a document entitled "Respondent's Notice that Because of the Evident Bias Toward the Claimant and the Procedural Defects that Deprived Her of the Opportunity for a Fair Arbitration She Does Not Consent to the Jurisdiction of the Arbitrator."  Exh. 44, Def.'s Mem. ("Notice") (Doc. No. 9-2) at 99–102.  In that Notice, Vyas asserted that the initial application of the Expedited Rules was improper and implied that, because the Expedited Rules were applied, the arbitrator selection process was incorrect.  Id.  She further asserted that Attorney Carta had "repeatedly excused [DAI]'s non-compliance with the deadlines, even granting untimely motions for extensions filed more than a week after the deadline had passed" and, at the same time, "refused to grant [Vyas]'s motions for an equal extension for what was due next."  Id.  In her Notice, Vyas concluded that "[a] fair arbitration hearing on September 13, 2017 is not possible" and, therefore, withdrew her consent to the arbitrator's jurisdiction and stated that she would not participate in the arbitration hearing.  Id.

The arbitration hearing went forward as scheduled on September 13, 2017, and Attorney Carta issued the Ex Parte Award on September 21, 2017.  See Exh. 48, Def.'s Mem. (Doc. No. 9-2) at 116–22.  Among other things, the Ex Parte Award terminated the franchise agreements for all three of Vyas's Subway restaurants and ordered Vyas

to pay $250 per day for any of her stores in which she continued to use Subway trade names, trademarks, and so forth.  See id.

## II.    DISCUSSION

The FAA delineates limited grounds upon which a district court may vacate an arbitration award.  Section 10 of the FAA provides that awards may be vacated under the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  The Second Circuit has held that arbitrators are entitled to "great deference" and parties attempting to vacate awards bear a "heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."  Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).

In her Motion to Vacate, Vyas argues that the final, ex parte award issued by Attorney Carta on September 21, 2017 ("Ex Parte Award"), should be vacated pursuant to two provisions of the FAA: (1) section 10(a)(3), which governs situations in which "the arbitrator[ ] [was] guilty of misconduct;" and (2) section 10(a)(4), which governs situations in which [an] arbitrator[ ] exceeded [his] powers."  See 9 U.S.C. § 10(a)(3)–

13

(4); Pl.'s Mot. at ¶¶ 55–71.  The court addresses the arguments raised under each of these provisions in turn.

A.    Arbitrator Misconduct

Section 10(a)(3) of the FAA permits district courts to vacate arbitration awards if the arbitrator was "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).  The Second Circuit has interpreted section 10(a)(3) to mean that, "except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review."  Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997).  "Arbitral misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator."  Oracle Corp. v. Wilson, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) (quoting In re Cragwood Managers, L.L.C. (Reliance Ins. Co.), 132 F. Supp. 2d 285, 287 (S.D.N.Y. 2001)).  The party moving for vacatur must show not only that the arbitrator committed misconduct but also that the party was prejudiced as a result.  See Rai v. Barclays Capital Inc., 739 F. Supp. 2d 364, 372 (S.D.N.Y. 2010), aff'd, 456 Fed. App'x 8 (2d Cir. 2011) (summary order); see also Hoteles Condado Beach, La Concha & Convention Center v. Union De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985) ("A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.").

Vyas argues that the Ex Parte Award was issued in violation of Section 10(a)(3) for several reasons: (1) that Attorney Carta "refused to grant [Vyas] an extension of the scheduled hearing date, despite the multiple extensions he had granted DAI," Pl.'s Mot.

14

at ¶ 68; (2) that Attorney Carta "denied [Vyas]'s motion to preclude DAI from calling undisclosed witnesses in violation of the plain language of the Scheduling Order," id. at ¶ 69; and (3) that Attorney Carta "refused to grant [Vyas]'s motion to compel DAI to produce a material witness," id. at ¶ 70. The court addresses each argument in turn.

### 1. Denial of Extension of Time for Hearing

When determining whether to vacate an arbitral award on the ground that the arbitrator refused to continue a hearing, the court "examines the facts and circumstances surrounding the arbitrator's refusal to grant an adjournment." Rai, 739 F. Supp. 2d at 371 (quoting Allendale Nursing Home, Inc. v. Local 1115 Joint Bd., 377 F. Supp. 1208, 1213 (S.D.N.Y. 1974)). Based on the facts and circumstances of the arbitration underlying this case, the court concludes that Attorney Carta's denial of Vyas's requests to postpone the hearing were not fundamentally unfair because Vyas did not show "sufficient cause" to continue the hearing in the first place. 9 U.S.C. § 10(a)(3). There is no allegation, for example, that Vyas, Attorney Alderman, or any of the witnesses disclosed by Vyas were unavailable for the September 13, 2017 hearing date. Cf. Bisnoff v. King, 154 F. Supp. 2d 630, 638 (S.D.N.Y. 2001) ("[A]bsent a reasonable basis for its decision, a refusal to grant an adjournment of a hearing, due to a medical emergency, constitutes misconduct under the [FAA] if it excludes the presentation of evidence material and pertinent to the controversy thus prejudicing the parties in the dispute . . . .").

Vyas alleged that delays caused by DAI in failing to provide availability of Hughes and Nate Bennett for depositions necessitated continuation of the hearing, but Attorney Carta was hardly unresponsive to those concerns, ordering that the depositions take

place within the timeframe originally requested by Vyas.  See Exh. 29, Def.'s Mem. (Doc. No. 9-2) at 32–36; Exh. 31, Def.'s Mem. (Doc. No. 9-2) at 41–42.  Vyas further alleged that DAI's failure to timely disclose witnesses necessitated continuation of the hearing, see Exh. 32, Def.'s Mem. (Doc. No. 9-2) at 43–46, but Attorney Carta responded to those concerns by extending the deadline for Vyas's pre-hearing brief twice, see Exh. 34, Def.'s Mem. (Doc. No. 9-2) at 51–55; Exh. 42, Def.'s Mem. (Doc. No. 9-2) at 89–91.  Furthermore, aside from generally asserting that, because DAI bore the burden, Vyas wanted to receive DAI's witness disclosures before making its own and well in advance of the hearing, Vyas did not provide any detail as to why DAI's late witness disclosure prejudiced Vyas or otherwise explain why the schedule was fundamentally unfair.  It was, therefore, reasonable for Attorney Carta to deny Vyas's requests for continuance, since the requests themselves did not state sufficient cause to continue.

The court also concludes that Vyas has failed to allege, much less provide evidence to support, that she was prejudiced by Vyas's denial of her requests to continue the hearing.  See Rai, 739 F. Supp. 2d at 372.

Attorney Carta's denial of Vyas's requests to arbitrate do not, therefore, constitute misconduct sufficient to vacate the Ex Parte Award.

2.      Ruling on Motion to Preclude Undisclosed Witnesses

In her Motion to Vacate, Vyas asserts that Attorney Carta committed misconduct by "den[ying] [Vyas]'s motion to preclude DAI from calling undisclosed witnesses."  Pl.'s Mot. at ¶ 69.  Presumably this allegation falls into the category of "other misbehavior by

which the rights of any party have been prejudiced," given that it is clearly not a refusal to postpone a hearing or to hear evidence.  9 U.S.C. § 10(a)(3).

In fact, however, Attorney Carta reserved judgment on that Motion, describing it as "premature" and stating that he would make a decision when "the issue [was] ripe." See Exh. 43, Def.'s Mem. (Doc. No. 9-2) at 92–98.  Although Attorney Carta did not explain his thinking further, Attorney Carta could reasonably have intended to rule on Vyas's Motion if and when DAI called undisclosed witnesses.  The court is aware of no reason why Carta's reservation of judgment on this matter qualifies as "misbehavior" within the meaning of section 10(a)(3).  Indeed, given that arbitrators are given wide latitude to manage the evidence presented in the proceedings before them, it is far from clear that it would have been inappropriate for Attorney Carta to allow undisclosed witnesses to testify.  See Tempo Shain, 120 F.3d at 20 ("In making evidentiary determinations, an arbitrator 'need not follow all the niceties observed by the federal courts.'" (quoting Bell Aerospace Co. Div. of Textron v. Local 516, 500 F.2d 921, 923 (2d Cir. 1973))).  Even assuming, however, that it would be "misbehavior" for Attorney Carta to allow undisclosed witnesses to testify, in reserving judgment he has not done so.

Furthermore, like the preceding argument, Vyas has failed to allege any prejudice stemming from Attorney Carta's reservation of judgment on this matter.  The court notes that, based on the Ex Parte Award issued by Attorney Carta, it appears that only Hughes and Nate Bennett testified at the evidentiary hearing.  Ex Parte Award at ¶¶ 13–24.  Vyas had ample notice that Hughes and Nate Bennett were likely witnesses, and those witnesses were specifically disclosed on DAI's September 5, 2017 witness

disclosure.  See Exh. 35, Def.'s Mem. (Doc. No. 9-2) at 56–58.  It is, therefore, unclear how Attorney Carta's decision with respect to Vyas's Motion to Preclude could have prejudiced her claims, even if he had issued a final decision denying the Motion.

For all the reasons articulated above, the court concludes that Attorney Carta's reservation of judgment with respect to Vyas's Motion to Preclude Claimant from Calling Undisclosed Witnesses does not constitute prejudicial misbehavior pursuant to section 10(a)(3).

### 3.     Ruling on Motion to Compel DAI to Produce Nick Bennett

The third and final basis for Vyas's Motion to Vacate under section 10(a)(3) relates to DAI's decision not to call Nick Bennett as a witness at the evidentiary hearing.

Under section 10(a)(3), arbitrators may commit misconduct by "refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 9.  However, courts in this Circuit have concluded that vacatur pursuant to this provision is not proper if the party seeking relief "did not avail itself of the opportunity to be heard."  Oracle Corp., 276 F. Supp. 3d at 31; see Capgemini U.S. LLC v. Sorensen, No. 04 Civ. 7584 (JGK), 2005 WL 1560482, at *7 (S.D.N.Y. July 1, 2005) ("Capgemini cannot now argue that it was denied a fundamentally fair hearing when it did not avail itself of the opportunity to be heard.").

As described at some length in the Facts section, see supra Section I, the fact that both a Nick Bennett and a Nate Bennett were involved in the inspection of Vyas's Subway franchises resulted in confusion on the part of the parties and Attorney Carta at the time that Vyas moved to depose Hughes and Nate Bennett and DAI opposed those depositions in late June and early July.  See Exh. 30, Def.'s Mem. (Doc. No. 9-2) at 37–

40 (Vyas's Motion to depose Hughes and Nate Bennett); Exh. 28, Def.'s Mem. (Doc. No. 9-2) at 25–31 (DAI's response in opposition to Vyas's Motion to depose, referring to Hughes and Nick Bennett).  That confusion surfaced once again in September after Vyas moved to compel Nick Bennett's testimony and Attorney Carta ruled an order to compel unnecessary "[a]s Mr. Bennett appears on [DAI]'s witness list."  See Exh. 43, Def.'s Mem. (Doc. No. 9-2) at 92–98.  In fact, Nate Bennett appeared on DAI's witness list, while Nick Bennett, the subject of Vyas's Motion to Compel, did not.  See Exh. 35, Def.'s Mem. (Doc. No. 9-2) at 56–58.  However, Attorney Carta's confusion would likely have been addressed, or irrelevant, by the end of the day on September 11, 2017, because he ordered DAI to disclose by that date "whether it intends to call Mr. Bennett."  Id.  The evidence submitted in this case also makes it clear that the correspondence between the parties and the ADRC was such that Vyas could have contacted ADRC to clarify Attorney Carta's error before DAI's response was due.  Furthermore, like the decision with respect to the Motion to Preclude discussed above, supra Section II(A)(2), Attorney Carta's decision regarding Vyas's Motion to Compel was not final.  See Exh. 43, Def.'s Mem. (Doc. No. 9-2) at 92–98 ("[I]f [DAI] determines not to call [Mr. Bennett] as a witness, I will revisit this issue.").

The court also concludes that, even if Attorney Carta had denied Vyas's Motion to Compel, Vyas has failed to show that she would have been prejudiced by that decision.  First, Vyas declined to participate in the hearing and therefore "did not avail [herself] of the opportunity to be heard," with or without Nick Bennett's testimony.  Oracle Corp., 276 F. Supp. 3d at 31.  In light of Vyas's decision not to participate in the

evidentiary hearing, any argument Vyas could have raised with respect to prejudice would have been highly speculative.

Second, Vyas has failed to show that Nick Bennett's testimony would have been "pertinent and material" to her case: she has not described what testimony Nick Bennett would have given, why it would be helpful to her, or why it would not be merely cumulative with respect to the testimony of Hughes and Nate Bennett. 9 U.S.C. § 10(a)(3); see Pl.'s Mot. at ¶ 39 (describing Nick Bennett as "DAI's Development Agent responsible for the territory in which the subject franchises are located, the father of Nate Bennett and the employer and potential business partner of Rafe Hughes"); id. at ¶ 70 (broadly alleging that Nick Bennett was a "material witness"); cf. Tempo Shain, 120 F.3d at 20 (arbitrator erred in excluding witness testimony where witness was "the only person who could have [testified]" as to certain material facts). She has not alleged or shown that she listed Nick Bennett on her own witness list, which suggests that she did not consider Nick Bennett to be a critical witness for her case. She also did not request to depose Nick Bennett, though her requests for depositions came before any suggestion, erroneous or otherwise, that DAI would call Nick Bennett at the hearing. See Exh. 30, Def.'s Mem. (Doc. No. 9-2) at 37–40 (requesting depositions of Hughes and Nate Bennett). Viewing Vyas's Motion to Compel in this broader context, the court cannot conclude that it would have been misconduct for Attorney Carta to deny her Motion because Vyas has failed to demonstrate that Nick Bennett's testimony was "pertinent and material" and not cumulative. 9 U.S.C. § 10(a)(3).

Finally, the court notes that Vyas has failed to allege—much less show—that Attorney Carta "refused" to hear Nick Bennett's testimony or any other evidence.

Setting aside, for the moment, the fact that Attorney Carta reserved judgment with respect to Vyas's Motion to Compel, the underlying request itself was not to allow testimony but rather to compel a witness to appear. Vyas has cited no authority for the proposition that, by failing to enter an order to compel the appearance of a witness, an arbitrator "refus[es] to hear evidence." 9 U.S.C. § 10(a)(3); cf. Tempo Shain, 120 F.3d at 20 (arbitrators erred in concluding arbitration hearings without waiting for testimony of critical witness). Instead, the analysis pursuant to section 10(a)(3) is generally whether an arbitrator erred in refusing to hear proffered evidence. See, e.g., Polin v. Kellwood Co., 103 F. Supp. 2d 238, 261 (S.D.N.Y. 2000) (discussing the parameters of an arbitrator's obligation to hear "proffered" evidence).

In short, Vyas did not give Attorney Carta (and has not given this court) any reason to believe that Nick Bennett's testimony would be material and beneficial to her case, or that Carta refused to hear said evidence. Therefore, even construing Attorney Carta's decision with respect to her Motion to Compel as a denial, which it was not, the court nevertheless concludes that Attorney Carta's decision was reasonable and not misconduct.

For the foregoing reasons, the court concludes that Vyas has not shown that Attorney Carta's decision with respect to her Motion to Compel was misconduct or that she was prejudiced by it.

B.    Jurisdiction of Arbitrator

The FAA permits district courts to vacate arbitration awards if "the arbitrator[ ] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award on the subject matter submitted was not made," as noted above. 9 U.S.C. § 10(a)(4). The Second Circuit has "'consistently accorded the narrowest of readings' to

21

this provision of law in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co., 564 F.3d 81, 85 (2d Cir. 2009) (internal citations omitted) (quoting Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003)). The focus of the jurisdictional inquiry for the purposes of section 10(a)(4) is the scope of the contract between the parties, namely "whether the arbitrators had the power based on the parties' submission or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Banco de Seguros, 344 F.3d at 262 (quoting Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 220 (2d Cir. 2002)).

Vyas argues that Attorney Carta exceeded his jurisdiction by issuing the Ex Parte Award because Attorney Carta was "appointed . . . based upon a methodology that was not agreed to by the parties." Pl.'s Mot. at ¶ 63. DAI argues that Vyas "specifically agreed to arbitration administered by ADRC under either the Expedited Rules or the Commercial Rules for disputes arising from her Subway Franchise Agreements in the Superseding Franchise Agreement," and that Attorney Carta's appointment was made pursuant to those rules. Def.'s Mem. at 26.

The court notes that the Second Circuit has not recognized the methodology of arbitrator appointment as a basis for vacatur under section 10(a)(4). See Anthony v. Affiliated Computer Servs., Inc., 621 Fed. App'x 49, 51 (2d Cir. 2015) ("An arbitrator exceeds his authority [pursuant to section 10(a)(4)] only by (1) 'considering issues beyond those the parties have submitted for [his] consideration,' or (2) 'reaching issues clearly prohibited by law or by the terms of the parties' agreement.'" (quoting Jock v.

Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011))); but see Cargill Rice, Inc. v.

Empressa Nicaraguense Dealimentos Basicos, 25 F.3d 223, 226 (4th Cir. 1994)

("Arbitration awards made by [an arbitrator] not appointed under the method provided in

the parties' contract must be vacated.").

Even assuming, however, that the methodology by which an arbitrator is

appointed may be grounds for vacatur under 10(a)(4), the court agrees with DAI that

Attorney Carta's appointment was made pursuant to the methodology agreed upon by

the parties in the Franchise Agreement. See Franchise Agreement at ¶ 10(a). Vyas's

argument to the contrary appears to be rooted in Vyas's repeated requests to receive

conflict disclosures before Attorney Carta was selected from the list of prospective

arbitrators. See Exh. 10, Def.'s Mem. (Doc. No. 9-1) at 86–89; Exh. D, Pl.'s Mot. (Doc.

No. 1-1) at 29–32. However, as the ADRC representative informed Attorney Alderman

at the time the requests were made, neither the Expedited Rules nor the Regular Rules

provide for pre-appointment disclosures. See Exh. 11, Def.'s Mem. (Doc. No. 9-1) at

90–91. In the Franchise Agreement, Vyas consented to arbitration through the ADRC

governed by the ADRC arbitration rules. Vyas has not raised any specific challenges to

the methodology of appointment aside from her desire to receive conflict disclosures

before making objections to the list of prospective arbitrators. Therefore, the court

concludes that the arbitration clause within the Franchise Agreement conferred upon

the ADRC the authority to appoint Attorney Carta as they did, and therefore did not

exceed its jurisdiction.

Vyas also objected to Attorney Carta's appointment after he provided his conflict

disclosures, as noted in the Facts section, see supra Section I. See Exh. G, Pl.'s Mot.

(Doc. No. 1-1) at 41–45. However, it was within the authority of the ADRC to empanel Carta over the objection of one party, consistent with Rule 12 of the Regular Rules. Regular Rule 12 ("If any one party files an objection to the continued service of the neutral arbitrator, ADR Center shall be authorized to determine whether the arbitrator will be permitted to serve and the parties will be informed of such decision, which shall be binding."). In empanelling Carta, the ADRC acted within the authority given it by the parties' Franchise Agreement. See Exh. 19, Def.'s Mem. (Doc. No. 9-1) at 123–28. As to the objections themselves, those objections alleged that Carta was biased in favor of DAI based on Carta's experience presiding over past arbitrations in which DAI was a party. See Exh. G, Pl.'s Mot. (Doc. No. 1-1) at 41–45. For the purposes of this case, however, Vyas has not moved for vacation of the Ex Parte Award on the basis that Attorney Carta actually had a conflict of interest that affected the outcome of the arbitration. See 9 U.S.C. § 10(a)(2) (allowing district courts to vacate awards "where there was evidence partiality or corruption in the arbitrators"). Therefore, the court will not address Vyas's bias-related objections except to note that she has not pursued them in this forum.

Therefore, the court concludes that neither the process by which Carta was appointed nor the appointment of Carta himself violated section 10(a)(4) of the FAA.

## III.   DAI'S MOTION TO CONFIRM AWARD

DAI has cross-moved for confirmation of the Ex Parte Award pursuant to section 9 of the FAA, title 9 section 9. See Def.'s Mot. (Doc. No. 10). Vyas's Opposition to DAI's Motion to Confirm simply states that, for the reasons set forth in her Motion to Vacate, DAI's Motion to Confirm should be denied. See Plaintiff's Objection to Defendant's Motion to Confirm Arbitration Award (Doc. No. 13).

Section 9 of the FAA provides, in pertinent part, as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

The arbitration clause in the Franchise Agreement entered into by the parties in this case provides that "[j]udgment rendered by the arbitrator may be entered in any court having jurisdiction thereof," as noted in the Facts section, supra Section I. Franchise Agreement at ¶ 10(a). The Ex Parte Award was issued on September 21, 2017, within a year of DAI's Motion to Confirm. See Exh. 48, Def.'s Mem. (Doc. No. 9-2) at 116–22. In addition, for the reasons stated above, the court concludes that vacatur of the Ex Parte Award is not warranted.

Therefore, DAI's Motion to Confirm Arbitration Award (Doc. No. 10) is granted.

## IV.    CONCLUSION

For the foregoing reasons, the court concludes that Vyas has failed to show that the Ex Parte Award at issue in this case falls within the narrow circumstances in which vacatur is proper. Therefore, Vyas's Motion to Vacate (Doc. No. 1) is **denied**. DAI's Motion to Confirm (Doc. No. 10) is **granted**. The case is closed.

**SO ORDERED**.

Dated this 21st day of March 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge